IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| BOBBY FISHER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ATLAS ENERGY SOLUTIONS, INC.;<br><br>Defendant. | Case No. 1:25-cv-788<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

AND NOW comes the Plaintiff, BOBBY FISHER ("Fisher" or "Plaintiff"), on behalf of himself and all others similarly situated, by and through his attorneys, and files this Class and Collective Action Complaint, alleging as follows:

**INTRODUCTION**

1. Plaintiff brings this action to recover damages under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C §201, *et seq.*, and the wage and hour laws - or, alternatively, the common law - of Ohio.

2. Plaintiff alleges that Defendant Atlas Energy Solutions, Inc., ("Atlas" or "Defendant") willfully and purposely failed to pay him, and those similarly situated to him, wages, including minimum and overtime wages, in violation of the law. Plaintiff seeks, for himself and those similarly situated, back wages (including regular and overtime), liquidated damages, and reasonable attorneys' fees and costs of this action from Defendant.

3. Defendant deliberately refused to compensate Plaintiff and others similarly situated for time spent engaged in work while traveling to Defendant's physical job sites, and vice versa. Defendant also failed to compensate Plaintiff and other similarly situated employees for time spent

traveling to and from employer-controlled housing at remote works, and time spent completing mandatory training.

4. This unpaid work time, including overtime, consists of several hours per week for Plaintiff and each similarly situated individual.

## SUMMARY OF CLAIMS

5. Plaintiff brings this action as a collective action to recover unpaid wages, pursuant to the FLSA.

6. In particular, Plaintiff brings this suit on behalf of the following similarly situated persons:

> All current and former hourly employees who have worked for Defendant within the statutory period covered by this Complaint and elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b) (the "Collective Class").

7. In addition, Plaintiff brings this action as a state-wide class action to recover unpaid wages, including overtime and unpaid straight time, pursuant to the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), Ohio Rev. Code § 4111.03, the Ohio Wage Prompt Pay Law ("OPPA"), Ohio Rev. Code § 4113.15, or, alternatively, Ohio common law (collectively, "Ohio State Laws").

8. Specifically, Plaintiff brings this suit on behalf of himself and a class of similarly situated persons composed of:

> All current and former hourly employees who have worked for Defendant in the State of Ohio during the statutory period covered by this Complaint (the "Ohio Class").

9. The Collective Class and Ohio Class are hereafter collectively referred to as the "Classes."

10. Plaintiff alleges on behalf of himself and the Collective Class that he is: (i) entitled to unpaid overtime wages, including any uncompensated straight wages, from Defendant for hours worked in excess of forty hours per week and (ii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. § 201 *et seq*.

11. Plaintiff alleges on behalf of himself and the Ohio Class that Defendant violated Ohio State Laws by failing to comply with the overtime provisions of the OMFWSA, including any uncompensated minimum wages, and failing to pay the Ohio Class as required by the OPPA. To the extent that Defendants disavow an agreement or obligation to pay Plaintiff and the Ohio Class wages under Ohio statutory law, Plaintiff alternatively alleges on behalf of himself and the Ohio Class that Plaintiff is entitled to payments from Defendants under theories of unjust enrichment and quantum meruit.

**PARTIES**

12. Plaintiff Bobby Fisher ("Plaintiff") is an adult individual and is a citizen of the State of West Virginia. Plaintiff Fisher worked for Defendant driving a forklift as a Senior Equipment Operator from October 5, 2024, through approximately mid-May, 2025. He worked on Defendant's various job sites in Ohio.

13. Pursuant to Section 216(b) of the FLSA, Plaintiff Fisher has consented in writing to be a plaintiff in this action. That consent form is attached hereto as Exhibit "A."

14. Defendant Atlas Energy Solutions, Inc., ("Atlas" or "Defendant") is a Delaware corporation and is headquartered in Austin, Texas. According to Defendant's most recent Form 10-K, its principal executive office is located at 5918 W. Courtyard Drive, Suite 500, Austin, Texas.

15. Defendant conducts business regularly in this District.

16. According to Defendant's most recent Form 10-K, "Atlas Energy Solutions Inc. is a leading proppant producer, logistics, and distributed power solutions provider, primarily serving the Permian Basin of West Texas and New Mexico."

17. In that same Form 10-K, Atlas touts that its "mission is to improve human beings' access to the hydrocarbons that power our lives, and, by doing so, [] maximize the value creation for our shareholders." Defendant goes on to state that in order to "fulfill [that] mission and create value for our shareholders," it "strive[s] to optimize the outcomes for . . . our employees . . ."

18. According to Defendant's most recent Form 10-K, Atlas has acquired a number of companies, including Fountainhead Logistics Employee, Co., LLC ("Fountainhead").

19. Notably, Fountainhead is listed on Plaintiff's most recent pay statement and identifies its address as the same address as Defendant's principal executive office. A copy of Plaintiff's pay statement is attached hereto as Exhibit "B"

20. At all times relevant, Defendant maintained control, oversight, and direction over Plaintiff and similarly situated employees, including with respect to the timekeeping, payroll, and other employment practices that applied to them.

21. Upon information and belief, Defendant applies the same employment policies, practices, and procedures to all hourly employees at all Defendant's worksite locations, including policies, practices, and procedures with respect to the payment of straight time and overtime compensation.

22. At all times relevant, Defendant's annual gross volume of sales made or business done was not less than $500,000.

## JURISDICTION AND VENUE

23. This action arises under the FLSA as well as Ohio wage and hour law and common law.

24. This Court has subject matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331.

25. This Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative facts.

26. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

27. Venue is proper in the Western District of Texas pursuant to 28 U.S.C. § 1391 because a substantial part of the acts or omissions giving rise to the claims occurred in this District, and Defendant is subject to personal jurisdiction in this District.

## FACTS

28. Plaintiff and members of the Classes were employed by Defendant in the regular course of Defendant's business.

29. Plaintiff and members of the Classes worked at remote locations away from their homes in fourteen day "hitches," on a two-week-on, one-week-off schedule.

30. Once arriving for a hitch, Plaintiff and members of the Classes, reside in hotels or other living quarters provided by Defendant.

31. At the start of his hitch, Plaintiff would travel from his home in West Virginia to the designated remote work site selected by Defendant. During Plaintiff's employ, these remote sites were located in the State of Ohio.

32. During his two-week hitches, Plaintiff resides at a hotel that was provided/arranged by Defendant.

33. During their two-week hitches, Plaintiff and members of the Classes worked one shift each day, for a total of fourteen shifts per hitch.

34. During hitches, Plaintiff and members of the Classes worked either the day shift, from 5 a.m. to 5 p.m., or the night shift, from 5 p.m. to 5 a.m.

35. The assignment to either day or night shift rotated, either by hitch or by another period of time determined by Defendant.

36. Plaintiff and members of the Classes were not paid for mileage or flights to travel to the employer hotel/housing at each remote work location.

37. Plaintiff and members of the Classes were paid per diem amounts during their hitches when at Defendant's remote work site.

38. Plaintiff and members of the Classes were not permitted to remain in employer housing after their hitches ended. Accordingly, they would return home while waiting for their next hitch.

39. During the two-week "on" period of each hitch, Plaintiff and similarly situated employees were subject to a number of Defendant's requirements including:

    a) Living in hotels or other housing provided by the Defendant;

    b) Reporting every morning to a place and at a time prescribed by Defendant;

    c) Being transported by Defendant to and from the location of the physical job site; and

    d) Being required to complete mandatory safety training.

40. On an average day, Plaintiff and members of the Classes were required to arrive at the hotel parking lot (or other location designated by Defendant), and from there, they and others were transported to the job site.

41. When working the day shift, Plaintiff and members of the Classes would leave their hotel sometime between 4 A.M. and 4:30 A.M in order to arrive at the work site by 5 A.M.

42. The daily drive from the hotel to the job site would take Plaintiff, on average, thirty (30) minutes.

43. On more than one occasion, Plaintiff's daily drive from the hotel to the job site exceeded forty (40) minutes.

44. Upon information and belief, other members of the Classes are required to travel up to an hour from the hotel provided by Defendant.

45. During their daily drive, Plaintiff and members of the Classes engaged in work activities, including receiving updates from their supervisor on events from the other shift, and discussing the tasks that needed to be completed during their shift so that they could immediately start work when arriving at the job site.

46. This process was repeated, in reverse, at the end of each workday.

47. At the end of their shift, if working a day shift, Plaintiff and members of the Classes would leave the job site between 5 P.M. and 5:10 P.M and arrive back at the hotel no earlier than 5:30 P.M.

48. Plaintiff and the members of the Classes were not permitted to transport themselves to and from the worksite.

49. Defendant, through its mandatory arrival time at the hotel parking lot and strict control of the transportation arrangements, required Plaintiff to report to work and start his workday when showing up to the hotel parking lot/designated spot to be transported to the job site.

50. Arrival at the hotel parking lot was the start of Plaintiff's workday and the subsequent commute via company-mandated transport was time that Plaintiff was engaged in work for Defendant.

51. Plaintiff and members of the Classes are paid on an hourly basis. They received pay for 12.75 hours per shift regardless of how much time they actually spent working during each shift. *See* Exhibit B.

52. Prior to March 2025, Defendant paid the driver of the company-mandated transport for all time spent traveling between the company hotel and the work site. Plaintiff rotated with other members of his shift taking turns driving. Accordingly, Plaintiff was paid typically once every three to four days for his driving from the designated pick-up site (e.g., hotel parking lot) to the work site.

53. Starting in or around March 2025, Defendant changed its policy and no longer paid Plaintiff or any member of the Classes for all time spent traveling between the company hotel and the work site, regardless of whether they were driving the company-mandated transport.

54. Defendants knowingly and purposefully failed to pay Plaintiffs and members of the Plaintiff Classes for time spent engaged in work during commuting between the employer-provided living quarters and the job site.

55. In addition to the uncompensated time spent engaging in work for Defendants during travel to and from the job site, Plaintiffs and members of the Classes were also uncompensated for time spent on required safety training.

56. Plaintiff was required to complete mandatory safety training on his mobile phone. Failure to complete the training could result in disciplinary action.

57. It was Defendant's expectation that if Plaintiff or members of the Classes were unable to complete the mandatory training during their shift, they were to complete it on their own time, at the hotel, and without compensation.

58. On more than one occasion, Plaintiff was required to complete this mandatory training in his hotel room. This further caused Plaintiff to exceed the 12.75 hours worked during those days.

59. Regardless of how many hours Plaintiff and members of the Classes actually worked, they were each paid for only 12.75 hours per shift by Defendant.

60. Upon information and belief, there are hundreds of individuals who are or were employed in similar positions to Plaintiff.

61. Upon information and belief, Defendant adopted a common policy of refusing to pay legally required compensation to all its employees.

62. Upon information and belief, Defendant has acted willfully in refusing to pay appropriate compensation to all its employees for time worked.

## CLASS & COLLECTIVE ACTION ALLEGATIONS

63. Plaintiff brings this action on behalf of the Collective Class as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. §216(b). Plaintiff also brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the Ohio Class for claims under Ohio state laws.

64. The claims under the FLSA may be pursued by those who opt-in to this case pursuant to 29 U.S.C. § 216(b). The claims brought pursuant under Ohio state laws may be

pursued by all similarly situated persons who do not opt out of each individual state class pursuant to Fed. R. Civ. P. 23.

65. Upon information and belief, the members of each of the Classes are so numerous that joinder of all members is impracticable. While the exact number of the members of these Classes is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes there are over one hundred individuals in each of the Classes.

66. Defendant has acted or has refused to act on grounds generally applicable to the Classes, thereby making final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole, appropriate.

67. The claims of Plaintiff are typical of the claims of the Classes he seeks to represent. Plaintiff and the members of the Classes work or have worked for Defendant and were subject to the same compensation policies and practices, including not being compensated for all hours worked.

68. Common questions of law and fact exist as to the Classes that predominate over any questions only affecting them individually and include, but are not limited to, the following:

   a) Whether employees of Defendant began their workday when they reported at a time and place designated by Defendant in order to be transported by the Defendant to and from job sites;

   b) Whether Defendant withheld pay despite employees' entitlement to the same;

   c) Whether Defendant acted knowingly when it decided not to pay employees for those hours.

   d) Whether Plaintiff and members of the Classes are entitled to compensatory damages, and if so, the means of measuring such damages;

   e) Whether Plaintiff and members of the Classes are entitled to restitution and/or liquidated damages; and

   f) Whether Defendant is liable for attorneys' fees and costs.

69. Plaintiff will fairly and adequately protect the interests of the Classes, as his interests are aligned with those of the members of the Classes. He has no interests adverse to the Classes he seeks to represent, and he has retained competent and experienced counsel.

70. The class action/collective action mechanism is superior to other available methods for a fair and efficient adjudication of the controversy. The damages suffered by individual members of the Classes may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Classes to individually seek redress for the wrongs done to them.

71. Plaintiff and the Classes he seeks to represent have suffered and will continue to suffer irreparable damage from Defendant's illegal pay policies, practices, and customs.

72. Defendant has acted willfully and have engaged in a continuing violation of the FLSA and State Laws.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE FLSA
**(Failure to Compensate for All Hours Worked)**

73. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

74. Defendant has engaged in a widespread pattern and practice of violating the FLSA, as described in this Class and Collective Action Complaint.

75. At all relevant times, Plaintiff and the Collective Class were engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

76. At all relevant times, Defendant employed Plaintiff and the Collective Class.

77. At all relevant times, Defendant has been an employer engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

78. At all times relevant, Plaintiff and the Collective Class were employees within the meaning of 29 U.S.C. §§ 203(e) and 207(a).

79. The overtime wage provisions set forth in the FLSA apply to Defendant.

80. Defendant has failed to pay Plaintiff and the Collective Class the overtime wages to which they are entitled under the FLSA.

81. Defendant's violations of the FLSA, as described in this Class and Collective Action Complaint, have been willful and intentional.

82. Because Defendant's violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

83. In addition to mandating overtime compensation, the FLSA requires that all straight time (also known as gap time) must be compensated for hours worked under 40 hours per week. *See* 29 C.F.R. § 778.315 ("The extra compensation for the excess hours of overtime work under the Act cannot be said to have been paid to an employee unless all the straight time compensation due him for non-overtime hours under his contract (express or implied) or under any applicable statute have been paid.")

84. By requiring Plaintiff to work "off-the-clock," Defendant failed to pay Plaintiff appropriately for all hours worked, including both unpaid straight time wages and unpaid overtime wages.

85. As a result of the unlawful acts of Defendant, Plaintiff and the Collective Class have been deprived of overtime compensation and other wages in amounts to be determined at trial, and are entitled to recover of such amounts, liquidated damages, prejudgment interest,

attorneys' fees, costs, other compensation pursuant to 29 U.S.C. § 216(b), and such other legal and equitable relief as the Court deems just and proper.

## COUNT II
## VIOLATION OF THE OMFWSA
### (R.C. § 4111.03 - Failure to Pay Overtime)

86. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

87. Defendant engaged in a widespread pattern, policy, and practice of violating the OMFWSA, as detailed in this Class and Collective Action Complaint.

88. At all relevant times, Defendant has been an employer within the meaning of OMFWSA. Ohio Rev. Code Ann. § 4111.14(b).

89. At all times relevant, Plaintiff and the members of the Ohio Class have been employees of Defendant within the meaning of the OMFWSA. Ohio Rev. Code Ann. § 4111.14(b).

90. Plaintiff and the Ohio Class are covered by the OMFWSA.

91. In violation of the OMFWSA, Ohio Rev. Code Ann. § 4111.03(A), Defendant failed to pay Plaintiff and the members of the Ohio Class overtime at a wage rate of one and one-half times their regular rates of pay.

92. Defendant's violations of the OMFWSA, as described in this Class and Collective Action Complaint, have been willful and intentional.

93. As a direct and proximate result of Defendant's unlawful conduct, as set forth herein, Plaintiff and the Ohio Class have sustained damages, including loss of earnings for hours of overtime worked on behalf of Defendant in an amount to be established at trial, liquidated damages of twice the amount of unpaid wages, and reasonable attorneys' fees and costs of the

action, pursuant to the OMFWSA, Ohio Rev. Code §§ 4111.10, 4111.14(J), and such other legal and equitable relief as the Court deems just and proper.

## COUNT III
## VIOLATION OF THE PROMPT PAY ACT
### (R.C. 4113.15 - Failure to Tender Pay by Regular Payday)

94. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

95. Defendant engaged in a widespread pattern, policy, and practice of violating the OPPA, as detailed in this Class and Collective Action Complaint.

96. At all relevant times, Defendant has been an employer within the meaning of OPPA. Ohio Rev. Code Ann. § 4111.14(b).

97. At all times relevant, Plaintiff and the members of the Ohio Class have been employees of Defendant within the meaning of the OPPA.

98. Plaintiff and the Ohio Class are covered by the OPPA.

99. In violation of the OPPA, Ohio Rev. Code Ann. § 4113.15, Defendant failed to promptly pay all wages earned to Plaintiff and the Ohio Class within 30 days of their regularly scheduled payday.

100. As a direct and proximate result of Defendant's unlawful conduct, as set forth herein, Plaintiff and the Ohio Class have sustained damages, including statutory and liquidated damages, and reasonable attorneys' fees and costs, pursuant to the OPPA, Ohio Rev. Code Ann. § 4113.15, and such other legal and equitable relief as the Court deems just and proper.

## COUNT IV
## OHIO COMMON LAW
### (Unjust Enrichment/Quantum Meruit)

101. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

102. Plaintiff and the members of the Ohio Class were employed by Defendant.

103. Plaintiff and members of the Ohio Class bring this Count in the alternative to their OMFSW claim, to the extent that Defendant disavows the existence of an agreement to pay them appropriate wages under the law.

104. Defendant has had a willful policy and practice of denying their employees compensation for time the employees spent engaging in work.

105. Defendant has retained the benefits of the labor performed by Plaintiff and Ohio Class Members under circumstances which rendered it inequitable and unjust for Defendant to retain such benefits.

106. Defendant has been unjustly enriched by not compensating Plaintiff and the Ohio Class Members for time Plaintiff and the Ohio Class spent working for Defendant's benefit.

107. Defendant knowingly received and retained the benefits of Plaintiff's and Ohio Class Members' time and labor under circumstances which rendered it inequitable and unjust for Defendant to retain such benefits.

108. As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and the members of the Ohio Class have suffered injury and are entitled to reimbursement, restitution, and disgorgement from Defendant of the benefits conferred by Plaintiff and the Ohio Class.

109. Plaintiff and the members of the Ohio Class are entitled to reimbursement, restitution and disgorgement of monies received by Defendant.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and members of the Classes pray for relief as follows:

A. An order preventing Defendant from retaliating in any way against Plaintiff and any putative Class or Collective member who joins or elects not to opt-out of the present suit based on their pursuit of these claims alleged herein;

B. Designation of this action as a collective action on behalf of the Collective Class and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all Collective Class members, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual consent to sue forms pursuant to 29 U.S.C. § 216(b);

C. Designation of Plaintiff as the representative of the Collective Class;

D. Designation of counsel of record as counsel for the Collective Class;

E. Certification of this action as a class action on behalf of the Ohio Class pursuant to Federal Rule of Civil Procedure 23;

F. Designation of Plaintiff as representatives of the Ohio Class;

G. Designation of counsel of record as counsel for the Ohio Class;

H. A Declaration that Defendant has violated the FLSA;

I. A Declaration that Defendant has violated Ohio State Laws;

J. A Declaration that Defendant has been unjustly enriched;

K. An Order enjoining Defendant, its officers, agents, successors, employees, attorneys, assigns, and other representatives, and all those acting in concert with it at its direction, from engaging in any employment policy or practice which violates Ohio State Laws;

L. An Order requiring Defendant to make whole those persons adversely affected by

the policies and practices described herein by providing appropriate back pay, and reimbursement for lost wages in an amount to be shown at trial;

M.  A Declaration that Plaintiff and members of the Ohio Class are entitled to the value, *quantum meruit*, of the services rendered by them to the Defendant;

N.  An Order requiring Defendant to pay back to Plaintiff and members of the Ohio Class the amounts representing Defendant's unjust enrichment and the value, *quantum meruit*, of the services rendered by them to the Defendant;

O.  All applicable statutory damages to Plaintiff, the Collective Class and members of the Ohio Class;

P.  Appropriate liquidated damages to Plaintiff, the Collective Class and members of the Ohio Class;

Q.  Reasonable attorneys' fees and costs of action incurred herein; and

R.  Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated: May 23, 2025

Respectfully submitted,

*/s/ Emil Lippe, Jr.*
Emil Lippe, Jr.
Texas State Bar No.12398300
LAW OFFICES OF LIPPE & ASSOCIATES
Park Place at Turtle Creek
2911 Turtle Creek Blvd., Suite 1250
Dallas, Texas 75219-6212
(214)855-1850
emil@texaslaw.com

Gerald D. Wells, III*
jerry@lcllp.com
Stephen E. Connolly
steve@lcllp.com
**LYNCH CARPENTER, LLP**
1133 Penn Ave., 5th Floor
Pittsburgh, PA 15222
Telephone:	(267) 344-0990
Facsimile:	(412) 231-0246

*Attorneys for Plaintiff and the Proposed Class*
**Pro hac vice* application forthcoming*